**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

NJ COED SPORTS LLC,

    *Plaintiff*,

v.

ISP SPORTS, LLC, VOLO SPORTS GROUP LLC, JOHN NEWMAN, TIMOTHY ERTL, JULIANNA HENAO, and DEBORAH NEXON,

    *Defendants*.

Civil Action No. 22-06969

OPINION

**John Michael Vazquez, U.S.D.J.**

    This case concerns an alleged misappropriation of trade secret customer information. Plaintiff NJ Coed Sports LLC ("NJ Coed Sports") alleges that Defendants violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), among other things. Currently pending before the Court is a motion to dismiss filed by Defendants ISP Sports, LLC ("ISP Sports"); John Newman; Timothy Ertl; and Julianna Henao (collectively, the "Moving Defendants").[1] D.E. 10. The Moving Defendants claim that Plaintiff has failed to plead its DTSA claim, and that the Court should decline to exercise supplemental jurisdiction over the remaining claims. The Court

---

[1] While Plaintiff has averred that it has served Defendant Volo Sports Group LLC and is still attempting to locate Defendant Deborah Nexon, D.E. 22, Plaintiff has not filed proof of service on the docket as to either of those Defendants.

reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the following reasons, the Moving Defendants' motion is **GRANTED**.

I.   **FACTUAL BACKGROUND**[3]

Plaintiff alleges that in or around 2011, it contracted with Jeffrey and Barbara Walder (the "Prior ISP Owners") for the use of a sports facility (the "Facility") in Randolph, New Jersey.  D.E. 1 ("Compl.") ¶ 15.  The Facility has numerous "indoor AstroTurf fields meant for conducting various recreational sports."  *Id.* ¶ 16.  Plaintiff was granted "exclusive use and access to their Facility for the purpose of hosting various adult recreational sports programs and attendant sporting activities" (the "Agreement").  *Id.* ¶ 17.  Plaintiff alleges that "the Prior ISP Owners executed a non-disclosure agreement (the 'NDA'), whereby it agreed, among other things, to maintain confidentiality of NJ Coed Sports' proprietary information."  *Id.* ¶ 18.  This proprietary information allegedly includes "customer lists and their respective contact information (*e.g.*, names, phone numbers, addresses, email addresses) (the 'Confidential Information')."  *Id.* ¶ 19.

Plaintiff alleges that "solely for insurance purposes, the Prior ISP Owners required NJ Coed Sports' customers to fill out waiver forms and to include their respective Confidential Information."  *Id.* ¶ 21.  Plaintiff continues that "the Prior ISP Owners were permitted to use NJ Coed Sports' customers' Confidential Information solely for this limited insurance purpose."  *Id.* ¶ 22.

---

[2] The submissions consist of the Moving Defendants' motion to dismiss, D.E. 10; the Moving Defendants' brief, D.E. 10-2 ("Br."); Plaintiff's opposition, D.E. 23 ("Opp."); and the Moving Defendants' reply, D.E. 24 ("Reply").

[3] The facts are derived from Plaintiff's Complaint.  D.E. 1.

"[I]n or around July 2018, the Prior ISP Owners sold the Facility, its operations and goodwill to ISP Sports." *Id.* ¶ 23. Defendant Newman is alleged to be "the principal, owner or member of ISP Sports," *id.* ¶ 5, but Ertl, Henao, or Nexon's connection to the entity Defendants is not clear. Plaintiff alleges that "[u]pon information and belief, as part of the sale of the Facility to ISP Sports, ISP Sports acquired certain assets, liabilities and obligations, including all obligations under the Agreement and NDA." *Id.* ¶ 24. Plaintiff adds that "the Prior ISP Owners advised ISP Sports of its obligation to maintain confidentiality of NJ Coed Sports' Confidential Information." *Id.* ¶ 25. Plaintiff also alleges that on several occasions, its principal Jay Oliva "advised ISP Sports, Newman, Ertl, and Henao"—both verbally and in writing—"of their collective obligation to maintain confidentiality of the Confidential Information and to not disclose such information to any third party for any purpose outside of the limited and sole purpose of requiring NJ Coed Sports' customers to fill-out requisite insurance and/or liability waivers." *Id.* ¶ 29. ISP Sports, Newman, Ertl, and Henao allegedly "acknowledged that NJ Coed Sports' Confidential Information was being gathered, stored and disseminated for the sole purpose of requiring NJ Coed Sports' customers to fill-out requisite insurance and/or liability waivers." *Id.* ¶ 30. ISP Sports, Newman, Ertl and Henao also allegedly "represented to NJ Coed Sports and Oliva both verbally and in writing that it would maintain confidentiality of the Confidential information[.]" *Id.* ¶ 31.

According to Plaintiff, "ISP Sports maintained a strict policy that all lists of teams and player rosters be forwarded to ISP Sports in the form of a spreadsheet sent via email prior to the commencement of each season and for each night NJ Coed Sports held its league activities." *Id.* ¶ 26. As a result, Plaintiff "regularly updated the aforementioned lists because new customers would often register after the season had begun." *Id.* ¶ 27. "Further, guest players were required to sign an insurance waiver with ISP Sports, wherein, the guest player's contact information,

including without limitation, name, telephone number, email address, date of birth and sport of participation, was collected and stored." *Id.* ¶ 28.

Plaintiff states that "[o]n or about January 25, 2022, ISP Sports and Newman demanded that NJ Coed Sports increase its customers' membership fee by approximately 35% . . . so that ISP Sports, in turn, could increase the rate it charged NJ Coed Sports for use of its Facility." *Id.* ¶¶ 33-34. Plaintiff refused, which allegedly caused ISP Sports to seek "a contractual arrangement with Volo Sports to replace NJ Coed Sports' presence at the Facility." *Id.* ¶ 35. Plaintiff alleges that ISP Sports and Volo Sports agreed (the "Volo Agreement") that "Volo Sports would operate various adult recreational sports programs at the Facility in place and instead of NJ Coed Sports and, to the exclusion of NJ Coed Sports." *Id.* ¶ 36. Plaintiff claims that it was then precluded "from continuing its operations at the Facility." *Id.* Plaintiff continues that "[i]n furtherance of the Volo Agreement, ISP Sports willfully and knowingly disseminated to Volo Sports NJ Coed Sports' Confidential Information." *Id.* ¶ 38. Plaintiff further asserts that "Volo Sports used NJ Coed Sports' Confidential Information to solicit NJ Coed Sports' customers away from NJ Coed Sports and, instead, to enroll with Volo Sports to participate in various adult recreational sports programs at the Facility." *Id.* ¶ 39.

Plaintiff filed this action on December 2, 2022, alleging nine state law causes of action and, in Count X, misappropriation of trade secrets in violation of the DTSA. *Id.* ¶¶ 102-11. The present motion followed. D.E. 10.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim

that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom. *Fowler*, 578 F.3d at 210.

### III. ANALYSIS

The Moving Defendants seek to dismiss Plaintiff's DTSA claim and assert that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. The DTSA states that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The Moving Defendants first argue that Plaintiff has failed to plead a nexus to interstate commerce, as required by the statute. Br. at 6-7. The Court agrees. The Complaint indicates that Plaintiff's product/service—adult recreational sports leagues—are entirely *intrastate*. As explained by another federal court:

> While "the Supreme Court has broadly construed the phrase 'involving interstate commerce' . . . to mean 'the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of

5

> Congress' Commerce Clause power[,]'" [*United States v.*] *Aleynikov*, 676 F.3d[ 71,] 81 [(2d Cir. 2012)] (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)), the actual language used in the DTSA is "used *in*, or intended for use *in, interstate . . . commerce.*" 18 U.S.C. § 1836(b)(1) (emphasis added). The words "in commerce" are not as broad as the words "involving commerce," or "affecting commerce," and cover "only persons or activities within the flow of interstate commerce." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (emphasis omitted); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (holding that the term "involving commerce" "encompasses a wider range of transactions than those actually 'in commerce'—that is, within the flow of interstate commerce"); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001) ("The plain meaning of the words 'engaged in commerce' is narrower than the more open-ended formulations 'affecting commerce' and 'involving commerce'"); *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 195 (1974) (interpreting the "in commerce" language to "denote only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer").

*Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 381 (N.D.N.Y. 2021). The Complaint only alleges that Plaintiff operated at the Facility in Randolph, New Jersey, and thus only alleges an intrastate product/service. Plaintiff's opposition acknowledges as much. Opp. at 6-7 ("ISP's facility is located in New Jersey and NJ Coed Sports' leagues operate in New Jersey[.]"). In opposition, Plaintiff cites to irrelevant paragraphs from the Complaint[4] and to the certification of Jay Oliva, Plaintiff's principal owner. Opp. at 6-7; D.E. 23-1. However, Plaintiff may not amend the Complaint through a certification.[5] *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

---

[4] Specifically, Plaintiff cites to Compl. ¶¶ 13-14, 17, 19, 28, 69. None of these paragraphs allege any facts from which it can be reasonably inferred that Plaintiff's product/service is used in, or intended for use in, interstate or foreign commerce.

[5] The Court is not deciding whether Oliva's certification provides a plausible factual basis.

6

Plaintiff has failed to plausibly plead that the purported trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce," and thus Count X is dismissed for failure to state a claim. Plaintiff may, however, file an amended complaint curing the deficiencies noted herein.

Because the Court will grant Plaintiff leave to amend, it will also address the Moving Defendants' remaining arguments at this time for the sake of efficiency. The Moving Defendants also assert that Plaintiff's DTSA claim should be dismissed because Plaintiff has not alleged that it is the "owner" of the alleged trade secrets. Br. at 7-8. As noted above, the DTSA allows "[a]n *owner* of a trade secret that is misappropriated" to bring a private cause of action. 18 U.S.C. § 1836(b)(1) (emphasis added). The DTSA defines "owner" as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). The Moving Defendants admit that a "company that compiles [a customer] list is then considered the 'owner' of that list of information," but claim that "there is no such compilation or list put together by Plaintiff that was then taken by Defendants." Br. at 7. The Moving Defendants also state, in their Reply, that "[i]f Plaintiff has in fact compiled a list of that contact information . . . Plaintiff would be the 'owner' of that 'list[.]'" Reply at 3. The Court disagrees with the Moving Defendants. Plaintiff alleges that the Confidential Information at issue includes "customer lists and their respective contact information." Compl. ¶ 19. Plaintiff also claims that it created and regularly updated "lists of teams and player rosters" which were forwarded to ISP Sports subject to the NDA. *Id.* ¶¶ 26-27. Plaintiff has sufficiently pled that it owns the customer lists which it created, maintained, and endeavored to keep secret.

As to customer information not contained in such lists, the Court agrees that Plaintiff has not alleged that it is the "owner" of such information. In addition to the customer lists, customers

allegedly provided their own personal information directly to ISP Sports in executing the liability waivers. *Id.* ¶¶ 21, 28-32. Plaintiff has not sufficiently alleged that it has "rightful legal or equitable title to, or license in," such information. 18 U.S.C. § 1839(4). While Plaintiff notes that the customers would not have provided Defendants with their personal information but for Plaintiff's business efforts, Plaintiff has provided no authority that such a dynamic makes them the "owner" of the information.[6]

The Moving Defendants also argue that Plaintiff's purported trade secrets are not "confidential," and thus not protectable under the DTSA. Br. at 8-10. More specifically, the Moving Defendants claim that "there is no list that Plaintiff maintained in secret that Defendants stole. All the information Defendants are alleged to have taken was given to them by third parties—the customers themselves—simply by Defendants asking for the information." Br. at 9. The Moving Defendants add that "Plaintiff is not alleging that it gave a confidential list to [D]efendants[.]"[7] Reply at 4. The DTSA states that for information to be a "trade secret," the owner must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). The Complaint alleges that the customer information Defendants received was subject to the NDA and agreements which limited use of the information to the execution of liability waivers. Compl. ¶¶ 18-20, 26-27, 29-32. Non-disclosure or confidentiality agreements are often considered "reasonable measures" of keeping information secret under the DTSA. *See*

---

[6] Plaintiff alleges that "[t]he Agreement, the NDA, and various written and oral communications memorialized that the Prior ISP Owners were permitted to use NJ Coed Sports' customers' Confidential Information solely for" the purpose of completing the liability waivers, and that ISP Sports acquired these obligations. Compl. ¶¶ 22-24. While such allegations are relevant to a breach of contract claim, they do not sufficiently allege that Plaintiff is the "owner" of the information under the DTSA.

[7] As noted above, the Court disagrees with this reading of the Complaint. Plaintiff has alleged that Defendants misappropriated customer lists. Compl. ¶¶ 19, 26-27.

*On Location, Inc. v. Popovich*, No. 22-00893, 2023 WL 2674843, at *3 (D.N.J. Mar. 29, 2023) (finding that plaintiff sufficiently alleged a protectable trade secret by "requiring confidentiality agreements for the limited persons who had access" to client information in a client list); *see also Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019) (finding that plaintiff "took reasonable steps to protect the secrecy of its plan through the use of non-disclosure agreements and appropriate facility security measures"); *Sunbelt Rentals, Inc. v. Love*, No. 20-17611, 2021 WL 82370, at *24 (D.N.J. Jan. 11, 2021) (ruling that plaintiff established "that it took reasonable efforts to protect the information in question by requiring employees, including [defendant], to sign confidentiality agreements"). Thus, Plaintiff has sufficiently pled that it took "reasonable measures to keep such information secret" and this argument likewise fails.

The Moving Defendants cite several out-of-circuit cases, many of which were decided before the DTSA became law, to claim that it is "well established" that customer lists "will not qualify as trade secrets if the information in publicly available, can be compiled from public sources like phone books or the Internet, or can be compiled simply by asking the customer for the information." *See* Br. at 8-9. This argument is belied by Third Circuit precedent. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021) ("A confidential compilation and organization of public information can amount to a trade secret.").

Because the DTSA claim—the only claim arising under federal law—is dismissed, the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claims. The Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations

9

of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added) (citation omitted); *see also Dickerson v. Desimone, Inc.*, 400 F. App'x 636, 638 (3d Cir. 2010); *Beckinger v. Twp. of Elizabeth*, 434 F. App'x 164, 170 (3d Cir. 2011). "[W]hile the determination is discretionary, '[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction.'" *Makwana v. Medco Health Servs., Inc.*, No. 14-7096, 2016 WL 7477755, at *4 (D.N.J. Dec. 28, 2016) (quoting *Shaffer v. Twp of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (footnotes omitted)). The Court sees no justification for the exercise of supplemental jurisdiction over the remaining state law claims at this early stage of the litigation and Plaintiff has not presented any. Thus, the Court declines to exercise supplemental jurisdiction over the remaining claims and Counts I through IX are dismissed without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown, the Moving Defendants' motion to dismiss, D.E. 10, is **GRANTED**. Count X of the Complaint is dismissed without prejudice for failure to state a claim and Counts I through IX are dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended complaint within that time, Count X will be dismissed with prejudice and this matter will be closed. An appropriate Order accompanies this Opinion.

Dated: June 14, 2023

_____
John Michael Vazquez, U.S.D.J.